IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| R. HENSON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 19-00082-CV-W-GAF |
| | ) |
| UNION PACIFIC RAILROAD | ) |
| COMPANY and FOSTER B. | ) |
| MCDANIEL, | ) |
| | ) |
| Defendants. | ) |

## ORDER

Now before the Court is Defendant Union Pacific Railroad Company's ("UP" or "Defendant") Motion for Judgment on the Pleadings. (Doc. # 27). Plaintiff R. Henson ("Plaintiff") opposes. (Doc. # 32). Also pending is Plaintiff's Motion for Leave to File Amended Complaint. (Doc. # 31). Defendant opposes. (Doc. # 34). For the following reasons, Defendant's Motion for Judgment on the Pleadings is GRANTED and Plaintiff's Motion for Leave to File Amended Complaint is GRANTED.

## DISCUSSION

### I. BACKGROUND

On December 18, 2018, Plaintiff filed his Petition in the Circuit Court of Jackson County, Missouri, alleging Defendants had discriminated against him because of his age and retaliated against him in violation of the Missouri Human Rights Act, Mo. Rev. Stat. § 213 *et. seq.* ("MHRA"). (Doc. # 1-1, pp. 4-24 ("Petition")). Plaintiff alleges that UP had constructively terminated him and that Foster B. McDaniel, a manager at UP, had aided and abetted in UP's scheme to "get rid of him." (*Id.* at ¶¶ 30, 34).

Plaintiff alleges a series of comments and events establish that UP was discriminating against him on the basis of age and that after he filed his Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") and the Missouri Commission on Human Rights ("MCHR"), the harassment increased. (*Id.* at ¶¶ 12-62). Specifically, Plaintiff alleges he was demoted on April 1, 2016, to the "Truck Desk" position from Supervisor Foreman General I, following a comment by a younger manager about Plaintiff's vacation time. (*Id.* at ¶¶ 12-18). According to Plaintiff, UP planned to eliminate the Truck Desk position during a restructuring of the company and moved him to that position to terminate him. (*Id.* at ¶¶ 21-22). Plaintiff further alleges his working conditions worsened by having to work longer shifts and UP assigning him and other older employees to more physically demanding jobs. (*Id.* at ¶¶ 25, 27).

Plaintiff alleges he repeatedly asked what UP's plan was for him, but never received an answer. (*Id.* at ¶ 28). Plaintiff states that, on or about June 21, 2017, he confronted McDaniel regarding Plaintiff's future with the company. (*Id.* at ¶ 29). McDaniel responded, "don't worry, this job will be yours as long as you want it. After you retire the job will be eliminated." (*Id.*). McDaniel was a manager, although it is not clear from the allegations if he was Plaintiff's manager. (*Id.*). Based on this sole comment, Plaintiff alleges McDaniel aided and abetted UP in its scheme to "get rid of" Plaintiff. (*Id.* at ¶ 30).

Plaintiff alleges that, following McDaniel's comment, company officers, including the managing director, made comments indicating Plaintiff would be terminated or should retire. (*Id.* at ¶¶ 31, 33, 44, 55). Plaintiff further alleges that UP made policy and workplace decisions designed to negatively impact his work. (*Id.* at ¶¶ 35-38, 45-47, 50-51). Plaintiff was not given the opportunity to fill a vacancy in a job position that he had previously held, and that position was given to a younger, less experienced employee. (*Id.* at ¶¶ 49-51). UP eliminated the Truck Desk

position as of October 15, 2017. (*Id.* at ¶ 56). Plaintiff was on vacation and was not told where to report until October 20, 2017. (*Id.* at ¶¶ 57-58). Plaintiff had been promoted back to his former position as Supervisor Foreman General I, albeit to a less desirable shift. (*Id.* at ¶¶ 58-61). It was not the shift Plaintiff had requested. (*Id.* at ¶ 62).

On October 25, 2017, Plaintiff filed his Charge of Discrimination. (*Id.* at ¶ 69). Plaintiff alleges his working conditions worsened following the filing of his Charge. (*Id.* at ¶ 70). Plaintiff recounts two specific incidents of alleged discrimination and/or retaliation. First, the managing director jokingly stated during a meeting that it might be his last day and added, "[Plaintiff], I need you to come in on your day off so [Plaintiff's former boss] can fire you too." (*Id.* at ¶ 73). Second, Plaintiff claims that someone placed a cartoon with a character named Randy on a bulletin board a few days before his last day. (*Id.* at ¶ 78). Plaintiff alleges consequently he was forced to resign and retire on August 1, 2018. (*Id.* at ¶ 77). Plaintiff does not allege that he amended his Charge or filed an additional Charge following his termination. (*See generally id.*).

Plaintiff filed his Motion for Leave to File Amended Complaint on June 7, 2019. (Doc. # 31). The proposed amended complaint does not alter or amend any of the factual pleadings but does add a count for hostile work environment against Defendant. (*See* Doc. # 31-1).

## II. LEGAL STANDARD

### A. Rule 15(a)(2) Leave to Amend Pleading Standard

Under Federal Rule of Civil Procedure 15(a)(2), "[t]he court should freely give leave [to amend] when justice so requires." Leave to amend should be freely granted unless "there exists undue delay, bad faith, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the non-moving party, or futility of the amendment." *Popalii v. Corr. Med. Servs.*, 512 F.3d 488, 497 (8th Cir. 2008). An amendment is futile if the proposed amended pleading "could not withstand a motion to dismiss under Rule 12(b)(6) of the Federal Rules of

3

Civil Procedure." *Zutz v. Nelson*, 601 F.3d 842, 850 (8th Cir. 2010).

B. **Rule 12(c) Judgment on the Pleadings Standard**

After the pleadings have closed, any party may move to have the Court enter judgment on the pleadings. Fed. R. Civ. P. 12(c). "A motion for judgment on the pleadings should be granted when, accepting all facts pled by the nonmoving party as true and drawing all reasonable inferences from the facts in favor of the nonmoving party, the movant has clearly established that no material issue of fact remains and that the movant is entitled to judgment as a matter of law." *Schnuck Mkts., Inc. v. First Data Merch. Servs. Corp.*, 852 F.3d 732, 737 (8th Cir. 2017). Generally, a Rule 12(c) motion for judgment on the pleadings is reviewed under the same standard as a Rule 12(b)(6) motion to dismiss. *Ginsburg v. InBev NV/SA*, 623 F.3d 1229, 1233 n.3 (8th Cir. 2010).

C. **Rule 12(b)(6) Standard**

When considering a Rule 12(b)(6) motion to dismiss for failure to state a claim, a court treats all well-pleaded facts as true and grants the non-moving party all reasonable inferences from the facts. *Westcott v. City of Omaha*, 901 F.2d 1486, 1488 (8th Cir. 1990). However, courts are "not bound to accept as true a legal conclusion couched as a factual allegation" and such "labels and conclusions" or "formulaic recitation[s] of the elements of a cause of action will not do." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)) (internal quotation marks omitted). A Rule 12(b)(6) motion should be granted only if the non-moving party fails to plead facts sufficient to state a claim "that is plausible on its face" and would entitle the party to the relief requested. *Twombly*, 550 U.S. at 570.

III. **ANALYSIS**

A. **Motion for Leave to File an Amended Complaint**

Plaintiff seeks leave to amend his complaint to "clarify" it by adding a claim for hostile work environment. (Doc. # 31, ¶ 4). Plaintiff does not otherwise propose any material changes to

the factual allegations. (*Compare* Petition *with* Doc. # 31-1). The Court agrees with Plaintiff that such an amendment would not prejudice Defendant but does not agree with Defendant that such an amendment is futile.

To prove a hostile work environment claim under the MHRA, Plaintiff must establish that: (1) he is a member of a protected group; (2) he was subjected to unwelcome harassment; (3) the protected characteristic was a contributing or motivating factor in the harassment; and (4) a term, condition, or privilege of his employment was affected by the harassment. *Hill v. Ford Motor Co.*, 277 S.W.3d 659, 666 (Mo. 2009) (en banc). "Discriminatory harassment affects a term, condition, or privilege of employment if it is sufficiently severe or pervasive enough to alter the conditions of a plaintiff's employment and create an abusive working environment." *Alhalabi v. Mo. Dep't of Nat. Res.*, 300 S.W.3d 518, 527 (Mo. Ct. App. 2009). "The conduct must be sufficient to create a hostile work environment, both as it was subjectively viewed by the plaintiff and as it would be objectively viewed by a reasonable person." *Id.*

Accepting Plaintiff's factual allegations as true, Plaintiff has stated a hostile work environment claim that is plausible on its face. Plaintiff has pled that comments based on retirement, an age-dependent factor, were made by managers. *See Ferguson v. Curators of Lincoln Univ.*, 498 S.W.3d 481, 492 (Mo. Ct. App. 2016) ("Though mere inquiries into the retirement plans of an employee who is of retirement age do not rise to the level of age discrimination, when (1) the decision to terminate an employee is based upon an age-dependent factor (such as retirement eligibility), (2) the employer offers implausible alternate explanations for the termination, and (3) there is evidence that someone with the ability to influence the decision acted based on age-based stereotypes, there is sufficient evidence from which a jury can infer that age was a contributing factor to the termination decision.") (internal quotation omitted). Plaintiff further pleads that

younger workers were given opportunities that he was not. Although Plaintiff's purported demotion to "Truck Desk" is not actionable because it occurred outside the statutory time limit, "'prior acts may be used as background evidence in support of a timely claim.'" *McKinney v. City of Kansas City*, --S.W.3d--, 2019 WL 1028080, at *3 (Mo. Ct. App. Mar. 5, 2019) (quoting *Tisch v. DST Sys., Inc.*, 368 S.W.3d 245, 254 (Mo. Ct. App. 2012)). These allegations state a plausible claim for relief.[1] Accordingly, Plaintiff's Motion for Leave to File an Amended Complaint will be granted.

**B.     Motion for Judgment on the Pleadings**

Plaintiff concedes he did not exhaust his constructive discharge claim in the traditional sense by filing a charge or amending his charge following the end of his employment. (Doc. # 32, pp. 6-8). Rather, Plaintiff argues equitable principles excuse his failure to file. (*Id.*). However, these equitable principles do not excuse the failure to exhaust discrete employment actions such as discharge.

"The MHRA requires that all administrative remedies be exhausted before petitioning the courts for relief." *Reed v. McDonald's Corp.*, 363 S.W.3d 134, 143 (Mo. Ct. App. 2012). "In order to exhaust all administrative remedies, the claimant must give notice of all claims in the administrative complaint." *Id.* However, "administrative complaints are interpreted liberally in an effort to further the remedial purposes of legislation that prohibits unlawful employment practices." *Alhalabi*, 300 S.W.3d at 524 (citing *Hill*, 277 S.W.3d at 670). "Accordingly,

---

[1] Plaintiff has not set forth sufficient facts to establish a plausible hostile work environment claim against McDaniel. Plaintiff has alleged that McDaniel made one comment: that Plaintiff would have a job until he retired. One comment, particularly one as benign as this, cannot prove hostile working conditions. *See Wright v. Over-The-Road & City Transfer Drivers, Helpers, Dockmen & Warehousemen*, 945 S.W.2d 481, 509 (Mo. Ct. App. 1997) ("More than a few incidents are required.").

administrative remedies will be exhausted as to all incidents that are like or reasonably related to the allegations contained in the charges filed with the MCHR." *Reed*, 363 S.W.3d at 143. "Further, the scope of the civil suit may be as broad as the scope of the administrative investigation which could reasonably be expected to grow out of the charge of discrimination." *Alhalabi*, 300 S.W.3d at 525.

That being said, the "reasonable relation" theory does not apply to "discrete acts." *See Chapman v. Carmike Cinemas*, 307 F. App'x 164, 174 (10th Cir. 2009). "Discrete acts," such as "termination, failure to promote, denial of transfer, or refusal to hire," constitutes a separate actionable unlawful employment practice that starts a new clock for filing charges. *Tisch*, 368 S.W.3d at 253-54 (citing *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113-14 (2002)). The United States Supreme Court has held that "a claim that an employer constructively discharged an employee is no different from a claim that an employer actually discharged an employee" when computing a limitations period. *Green v. Brennan*, -- U.S. --, 136 S. Ct. 1769, 1777 (2016). Thus, a constructive discharge claim is also a discrete act and the reasonable relation theory does not apply to it. Instead, "each discrete incident of [discriminatory or retaliatory] treatment constitutes its own unlawful employment practice for which administrative remedies must be exhausted." *Richter v. Advance Auto Parts, Inc.*, 686 F.3d 847, 851 (8th Cir. 2012) (quotation omitted). This is equally applicable to discrete acts occurring *prior to* and *after* the filing of a charge. *Id.* at 852-53.

Plaintiff filed only one charge of discrimination with the MCHR on October 25, 2017, over nine months before his separation on August 1, 2018. He never filed a charge or amended charge after (or over) his separation, making it legally impossible for Plaintiff to have exhausted administrative remedies in connection with a constructive discharge. *See, e.g., Thomas v. Sw. Bell*

7

*Tel. Co.*, No. 4:14-CV-01993 ERW, 2016 WL 2622394, at *3 (E.D. Mo. May 9, 2016); *Busse v. Daiichi Sankyo, Inc.*, No. 4:13-CV-98 CEJ, 2013 WL 1755373, at *3 (E.D. Mo. Apr. 23, 2013). Therefore, Plaintiff's constructive discharge claims have not been administratively exhausted and must be dismissed.

Plaintiff also argues that his Petition was not limited to claims of constructive discharge. (Doc. # 32, pp. 8-10). As noted above, Plaintiff's claim that his alleged demotion was discriminatory is not actionable because it was a discrete act that occurred outside the statutory time limit. *Morgan*, 536 U.S. at 113. Although this allegation, if true, may be used as background for his hostile work environment claim, *McKinney*, 2019 WL 1028080, at *3, Plaintiff cannot seek an independent remedy for the demotion. Moreover, any argument that shift or assignment changes constitute a discrete act is a non-starter. It is a longstanding principle that "[c]hanges in duties or working conditions that cause no materially significant disadvantage, such as [] reassignment, are insufficient to establish the adverse conduct required to make a prima facie case." *Harlston v. McDonnell Douglas Corp.*, 37 F.3d 379, 382 (8th Cir. 1994).[2]

## CONCLUSION

Plaintiff did not exhaust his administrative remedies on the constructive discharge claim. Accordingly, Defendant's Motion for Judgment on the Pleadings is GRANTED and Counts I, II, III, and IV are dismissed.

The addition of a hostile work environment claim against Defendant would not prejudice Defendant and is not futile. Accordingly, Plaintiff's Motion for Leave to Amend Pleadings is

---

[2] To the extent Plaintiff is contending he set forth a hostile work environment claim in his original Petition, that argument is mooted because the Court has granted him leave to add such a claim. Whether the pre-August 28, 2017 MHRA applies to some, all, or none of hostile work environment claim is a question better left for another day when it can be fully briefed by the parties.

GRANTED. Plaintiff shall file his Amended Complaint, excluding the constructive discharge claims, within ten days from the date of this Order.

**IT IS SO ORDERED.**

                                                      /s Gary A. Fenner
                                                     GARY A. FENNER, JUDGE
                                                     UNITED STATES DISTRICT COURT

DATED: July 15, 2019